### HENRY v. HENRY.
Nos. 65-C-149 and H. C. 2595.
Circuit Court, Dade County.
June 10, 1965.

Lyle D. Lieberman, Miami, for plaintiff.

William W. Bailey and John Goshgarian, both of Miami, for defendant.

JAMES LAWRENCE KING, Circuit Judge.

*Final decree*: This cause came on to be heard before the court on final hearing upon the petition of the natural mother, Gloria Henry Glickman, for permanent custody and support of her minor child, Donald Holt Henry, Jr.; and the petition of the natural father, Donald Holt Henry, for a writ of habeas corpus seeking custody of his son.

A hearing on the father's petition was held on the 14th day of January, 1965, and temporary custody fixed in the paternal grandmother (by stipulation of the parties) pending a final hearing.

The natural father filed his answer and counter-petition seeking permanent custody of the child. The habeas corpus and child custody proceedings were consolidated for trial.

This proceeding has been quite lengthy. The court, having considered the testimony of 22 witnesses in over 27 hours of hearings, heard oral argument of counsel for the respective parties and examined the exhibits and pleadings, finds —

The court has jurisdiction over the parties and the subject matter of these suits.

The equities of the cause are with the defendant, Donald H. Henry, and that the plaintiff, Gloria Glickman (formerly Gloria Henry), is not a fit and proper person to have custody of the minor son of the parties.

The subject of this controversy is a healthy, handsome 4½-year-old boy, born December 7, 1960. In April of 1961, the mother left the marital household with the child and moved in with her mother, the child's maternal grandmother. The father,

being concerned over the unexplained absence of his wife and child removed his son from the maternal grandmother's home, cared for the boy here in Miami for a few days — hoping his wife would return to the marital abode — and then took the child to the home of his parents in Covington, Kentucky. Shortly thereafter, the paternal grandmother, along with the child, came to Miami for a two-week visit from Kentucky. The testimony shows that the mother saw the child on only one occasion during that period and was content to leave her son in the care, custody and control of the father and his parents.

In the summer of 1961, the parties consulted an attorney with reference to obtaining a divorce. At that time, the testimony revealed that the mother agreed to give legal custody of the child to the father but before the agreement was executed, the parties reconciled and moved to Covington, Kentucky.

A short time later, the mother left Kentucky and returned to Miami leaving her son with his father. The mother subsequently returned to Kentucky and again returned to Miami where on the 4th day of October, 1962, she was granted a divorce from Donald Holt Henry, Henry v. Henry, chancery no. 62-C-8184. No determination was made as to the custody of the child in that suit.

It should be noted that at the final hearing for her divorce, the mother testified that the child was living in the home of his paternal grandparents and was being well cared for. From the time of her final separation from Donald Holt Henry and subsequent divorce, until shortly after her second marriage to Edward Glickman on April 14, 1963, the mother failed to communicate with anyone in Covington, Kentucky, evidencing any interest in the welfare of the child. The next contact came while on her honeymoon en route from Miami to New York City, when the plaintiff mother and her present husband, Edward Glickman, visited the child in Kentucky for a few hours. From that time, until the latter part of October of 1964, the child continued to live in the custody of his father in Kentucky, while the mother made a new life with her new husband in Miami. During this period of time, the mother evidenced no interest in the child and was apparently satisfied to leave her son with the defendant.

The mother then contacted the father and indicated that she and her present husband were contemplating a divorce and expressed a desire to return to Kentucky. In the latter part of 1964, the plaintiff and defendant met in Covington, Kentucky, and traveled together to Canada where the father had work, playing in a band. The parties traveled with the band to several other cities without the child and sometime in the latter part of No-

vember or early December of 1964, the mother and father moved to Oklahoma City taking the child with them. During these periods of travel from place to place, the plaintiff, Gloria Glickman, and defendant, Donald Holt Henry, conducted themselves as husband and wife — living together at hotels and motels, having sexual relations, and presenting to the other members of the band the outward facade of a married couple.

It is clear that the plaintiff mother was not interested in, or concerned about, her minor son (who continued to be cared for by his paternal grandmother in Kentucky) for she could have remained in Covington with the child but chose instead to gratify her own whims and travel with her ex-husband around the country.

Meanwhile, a complaint for divorce was filed against the mother on the 17th day of November, 1964, by her present husband, Edward Glickman, in which she was charged with extreme mental cruelty. A decree pro confesso was entered on the 12th day of December, 1964, but the file reflects no further action in that case (chancery no. 64-C-12719).

The testimony shows that Donald H. Henry and Gloria Glickman selected a home they planned to purchase in Oklahoma City and furniture was purchased. On the 23rd day of December, 1964, the plaintiff mother, while the father was out of town working as a member of the band, without notice, or any prior indication of her intentions, took the child and returned to Miami. As soon as the father returned to Oklahoma City and learned of the absence of his child, he made frantic efforts to ascertain where the plaintiff mother had taken the child. Upon learning they were in Miami, he immediately left Oklahoma and came to Miami for the purpose of getting his son back.

In the meantime, the mother, upon return to Miami reconciled with Edward Glickman, and took up residence in a home owned by her father together with two unmarried women friends of her father.

Subsequent to the initial hearing on the 14th day of January, 1965, the mother and her present husband, Edward Glickman, rented a home on a month-to-month basis where they now live. The plaintiff mother is unemployed and her present husband, Glickman, is employed by her father. Glickman testified that it is his eventual ambition to go to medical college, although he has one prior conviction for narcotics violation in his record. The evidence shows that the plaintiff mother has undergone psychiatric consultations and treatment for "feelings of depression." The doctor testified that she is now completely recovered.

Since her second marriage, the plaintiff mother has lived in several apartments for various (and usually brief) intervals. She candidly admitted to having extramarital affairs during both of her marriages and up until the latter part of 1964, was exchanging correspondence with a former paramour.

The plaintiff's employment record shows a pattern of restlessness and inability to stick with any job for a sustained period. She worked for several doctors for short periods of time. The witnesses who had a close personal relationship with Gloria and Don during their marriage and subsequent to the birth of the child, voiced doubts whether the best interest of the child would be served by awarding custody of the mother on a basis of this lack of stability in the mother's past and present life.

The mother's testimony and that of her witnesses, including her psychiatrist, revealed to this court that her underlying desire to obtain custody of her child is for the purpose of satisfying her present emotional needs rather than a recently acquired concern for her child.

In contrast, the evidence clearly demonstrates that the child received excellent care while in the custody of the father.

The child has access to varied recreational facilities in Kentucky. He is receiving religious training and it is quite apparent after hearing the testimony of the father and the paternal grandmother that the boy is being taught correct moral values. It is also quite evident that the child will be financially secure. The love and care that the child has received from his father and the paternal grandparents for the past four years has given the child emotional security when it was most needed — his life with his father has been stable, certain, wholesome and constant.

The court is of the opinion that the father has discharged his parental responsibilities and that to uproot the child from the security he now enjoys would seriously and adversely affect his emotional stability.

It is, thereupon, considered, ordered, adjudged and decreed — (1) That permanent care, custody and control of Donald Holt Henry, Jr., be and it is hereby awarded to the defendant father, Donald Holt Henry, with reasonable rights of visitation accorded to the mother, Gloria Glickman. (2) That the father, Donald Holt Henry, may remove the child to his home in Covington, Kentucky, on or after seven days from the signing of this decree. (3) That jurisdiction is reserved for the purpose of taxing costs and enforcing the provisions of this decree.